GREAT LAKES HOTEL CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 1952. Promulgated January 24, 1928.

*Edwin H. Cassels, Esq.*, and *Benjamin B. Pettus, Esq.*, for the petitioner.

*J. Harry Byrne, Esq.*, for the respondent.

128

# 132

[redacted]

OPINION.

LITTLETON: Petitioner contends that during 1920 it was affiliated directly with H. L. Stevens & Co. and also with the Olmsted Hotel Co.; that H. L. Stevens & Co. was then affiliated with the Metropolitan Mortgage Co., the Olmsted Hotel Co., and Lake Erie Hotel Co.; and that in consequence the petitioner, through its affiliation with H. L. Stevens & Co., was also thereby affiliated with such later-named companies.

The " control " referred to by section 240 of the statute is of " substantially all of the stock," not simply corporate control of the conduct of the business or policy pursued. Cooperation in or consent to corporate control or policy, by the giving of proxies or otherwise, does not necessarily mean control or ownership of substantially all of the stock. We may appropriately here repeat what was stated in our opinion in *Ice Service Co., et al.,* 9 B. T. A. 386:

> In interpreting the statute and its kindred provision of the Revenue Act of 1918, it has been held that there must be full and complete control of substantially all the stock and that this control must be a genuine one actually exercised. *Appeal of Isse Koch & Co.,* 1 B. T. A. 624; *Appeal of Cleveland & Mahoning Valley Railway Co.,* 4 B. T. A. 1040; *Benjamin Electric Manufacturing Co.* v. *Commissioner,* 6 B. T. A. 1204. Control of the business of a corporation is not control of its stock, within the meaning of the statute, and where there is control of a corporation's business, but there are quiescent stockholders present, representing a sizeable minority, such business control does not amount to the control of substantially all of the stock. *Appeal of Watsontown Brick Co.,* 3 B. T. A. 85.

> \* \* \* And even assuming that the position of a creditor permits one to press his claim and thus possibly to defeat the right of a stockholder to receive dividends, this does not constitute control of a minority stockholder's stock.

He still has the right to vote his stock and thus oppose the wishes of the majority if he so desires. True, the votes of the minority will not determine the policies of the corporation when the majority of the voting shares is held by one individual or corporation, but such control of the policies and financial affairs of the corporation as an entity does not amount to control of the individual stockholder or his stock. There must be a control of the voting rights. *Appeal of Canyon Lumber Co.*, 1 B. T. A. 473; *Adaskin-Tilley Furniture Co.* v. *Commissioner*, 6 B. T. A. 316.

In *Adaskin-Tilley Furniture Co.*, 6 B. T. A. 316, 319, we stated:

There is no doubt but that Adaskin had absolute control of the business methods, policies and relations of the two corporations. He dominated and managed the business of each. He settled questions of policy, expediency and methods of operation. He organized both corporations with the understanding that he should have control of the business. We have heretofore held, however, in the *Appeal of Canyon Lumber Co.*, 1 B. T. A. 473, that the control "referred to in the statute, whether it be legal or otherwise, means control of the voting rights of stock."

In *J. K. Rishel Furniture Co.* v. *Commissioner*, 9 B. T. A. 287, we stated:

The facts that stockholders would have given proxies to the majority to vote their stock, had such request been made; that the minority stockholders were friendly to the majority; that at the time the minority purchased their stock, there was some sort of oral understanding that the majority would be given an opportunity to buy stock which the minority might desire to sell, and other similar circumstances are not sufficient to convince us that the control of the voting rights of stock contemplated by the statute existed in this case.

There was harmony between the minority stockholders and the officers and heads of H. L. Stevens & Co. and all three of the hotel companies. The minority stockholders of petitioner and of the other named corporations did not oppose nor contest the management and operation of any of said companies, but acquiesced in the views and policy of Stevens and those associated with him, which views apparently accorded with their own opinion. The voting rights of the substantial outside minority have not been shown to have been controlled by the Stevens Company.

It is true that there were numerous intercorporate transactions between the corporations, and it does not appear that there was ever any friction existing between the companies. Minority stockholders at times gave proxies which were voted in accordance with the views of Stevens, but sufficient evidence is lacking to establish that the minority stockholders who owned substantial stock interest were controlled in the matter of giving their proxies, or in any other manner.

In *Canyon Lumber Co.*, 1 B. T. A. 473, we held:

The Commissioner contended that the expression "controlled through closely affiliated interests" mentioned in the statute meant a control which was exer-

cised through legally enforceable means or a legal control as distinguished from an actual control of stock. The control, however, referred to in the statute, whether it be legal or otherwise, means control of the *voting rights of stock*. (Italics supplied.)

In *Isse Koch & Co.*, 1 B. T. A. 624, 627, we stated:

* * * We believe that a proper construction of the statute, if it is to serve the purpose for which it was intended, requires us to hold that the "control" mentioned therein means actual control, regardless of whether or not it is based upon legally enforceable means. The control, however, must be shown to be a genuine and real control actually exercised, and it can not be established by mere assertions or agreements between majority and minority stockholders unsupported by facts. *Potential control of stock is not sufficient in itself* to justify consolidation. No definite rule, applicable to all cases, can be laid down for recognizing control. Each case must, therefore, be considered and decided upon its own facts and surrounding circumstances. (Italics supplied.)

In the case of *Tunnel Railroad of St. Louis*, 4 B. T. A. 596, this board held (syllabus):

Authorization to vote stock by proxy does not effect a separation of the voting power from the ownership of the stock; neither does it constitute a relinquishment by the stockholders of *any right of ownership or control of his stock*. (Italics supplied.)

There is insufficient evidence in this record to establish that the minority stockholders were in any wise controlled in the exercise of the voting rights of their stock.

On consideration of all the facts presented, we are of opinion that petitioner was not affiliated with H. L. Stevens & Co. or with any of its alleged affiliated corporations during 1920.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

LANSDON, TRUSSELL, GREEN, PHILLIPS, ARUNDELL, and SIEFKIN dissent.